UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CAROL A. FILICETTI,<br><br>               Plaintiffs,<br>   v.<br><br>UNITED STATES OF AMERICA, THE STATE OF IDAHO; THE IDAHO STATE TAX COMMISSION,<br><br>               Defendant. | Case No. 1:10-cv-00595-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This case involves a dispute between the United States and Carol Filicetti, the ex-wife of taxpayer Joe Filicetti.[1]  Joe is not a party to this action, but he failed to pay his 2005 federal income taxes and in 2008, the government filed a notice of tax lien against him.  Carol seeks a determination that the tax lien did not attach to her home.

The parties cross-moved for summary judgment (Dkts. 20, 27) and the matter has been fully briefed.  The Court has determined oral argument would not assist the decision-making process and will decide this motion without a hearing.  For the reasons explained below, the Court will grant Carol's motion and deny the government's motion.

---

[1] The Court entered default judgment against the State defendants.  *See Sept. 13, 2011 Memorandum Order,* Dkt. 44.

# FACTS

Carol and Joe Filicetti divorced in December 2005. The divorce decree awarded the Filicettis' home to Carol, though she agreed to pay Joe 50 percent of the equity if she sold it within three years. Specifically, the divorce decree provides:

> Carol is awarded the parties' residence at 2323 Woodlawn.
> . . .
> In the event Carol sells the residence within three (3) years from the date of entry of this Decree, she agrees to split any equity received from said sale after the payment of the remaining balance on the first mortgage and any costs associated with the sale of the property equally between her and Joe. Three years and one day after the Judgment and Decree of Divorce is entered the property shall be Carol's and either retained or sold at her discretion, with her retaining all of the proceeds therefrom.

*Divorce Decree, Ex. C to Parker Dec.*, Dkt. 31-3, ¶ 4.

Carol did not sell the house during the three years after the divorce decree was entered. But she did not record the divorce decree with the county recorder until October 2010, nearly five years after entry of the divorce decree. Meanwhile, Joe did not pay his federal income taxes for 2005, and in September 2008, the government filed a notice of federal tax lien against Joe for unpaid taxes.[2] This quiet title action ensued. Carol seeks a determination that the federal tax lien cannot attach to her home.

# ANALYSIS

## A. The Legal Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides that "[t]he court shall grant summary judgment if the

---

[2]As of April 2011, Joe owed roughly $40,000 in unpaid taxes for 2005. *See Bent Dec.*, Dkt. 30, ¶ 4.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party moving for summary judgment has the initial burden of showing there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Id.* at 248. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has met its initial burden, the nonmoving party has the burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be

no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).[3]

In applying the above standard, the Court must view the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Additionally, when parties cross-move for summary judgment, the Court will consider each motions on its own merits. *Fair Housing Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Nonetheless, in ruling on cross-motions, the Court will consider the entirety of each party's evidentiary submission, regardless of which motion (or opposition) the evidence accompanied. *Id.* at 1136-37.

**B.     The Federal Tax Lien Statute**

The government's tax lien against Joe Filicetti was created by Internal Revenue Code § 6321. That statute provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, . . .) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, *belonging to such person.*

I.R.C. § 6321 (emphasis added).

---

[3] See also Rule 56(e) which provides:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)     give an opportunity to properly support or address the fact;
(2)     consider the fact undisputed for purposes of the motion;
(3)     grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it; or
(4)     issue any other appropriate order.

Federal courts look to state law to determine what property rights "belong to" the taxpayer. *See Aquilino v. United States*, 363 U.S. 509, 512-13 (1960). But application of state law is restricted to what rights the taxpayer has in the property at issue; creditors' rights under state law are not relevant to this determination. The Supreme Court underscored this principle in the landmark decision, *United States v. National Bank of Commerce*, 424 U.S. 713, 727 (1985), explaining that the "federal statute relates to the taxpayer's right to property and not his creditor's."

In *National Bank of Commerce*, the government attempted to levy a joint bank account based on one of the account holder's failure to pay taxes. *Id.* at 716. The bank refused to comply with the levy, contending it did not know which portion of the joint funds belonged to the taxpayer. *Id.* The Court held that because the taxpayer had the unqualified right to withdraw all the funds from the joint account, the government had the same right. *Id.* at 724. It also specifically rejected the taxpayer's argument that the government should not be able to levy the account because, under state law, the taxpayer's creditors could not garnish the account. *Id.* at 727-28 ("the fact[] that under Arkansas law Roy's creditors, unlike Roy himself, could not exercise his right of withdrawal in their favor . . . [is] irrelevant . . . .").

Under *National Commerce*, the key inquiry here is what rights, if any, Joe Filicetti had in the Filicetti home when the government filed its notice of tax lien. The starting point for this analysis is the divorce decree. The divorce decree was entered well before the government filed its notice of tax lien and expressly provides that "Carol is awarded

the parties' residence . . ." *Divorce Decree*, Dkt. 33-1, ¶ 4.  It goes on to provide that Joe will receive a payment "[i]n the event Carol sells the property . . . ." *Id.*

Preliminarily, a divorce decree is effective to transfer title to the spouse who is awarded the property.  *See, e.g., Chavez v. Barrus,* 192 P.3d 1036, 1044 (Idaho 2008) (citing Idaho R. Civ. P. 70) ("the divorce decree . . . divided the parties' community property, both real and personal, and vested title to the home in Barrus, thus effectuating the conveyance").  Thus, at the time the government imposed its lien, it had – at best – a claim to Joe's contingent, contractual right to a monetary payment if the house sold.  *See generally Seaboard Surety Co. v. United States,* 306 F.2d 855, 859 (9th Cir. 1962).  Joe did not, however, have any remaining real property rights in the home; his contingent right to receive a payment was a personal property right.  *See Chavez,* 192 P.3d at 1044-45 (spouse's lien in marital home was personal property right, not a real property interest).

Consequently, the government's tax lien cannot attach to Carol's property.  After all, "the tax collector steps into the taxpayer's shoes." *United States v. Gibbons,* 71 F.3d 1496, 1501 (10th Cir. 1995) (explaining *National Bank of Commerce*).  And, more to the point, the tax collector "'must go barefoot if the shoes wear out.'" *Gardner v. United States*, 34 F.3d 985 (10th Cir. 1994) (quoting 4 Boris Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 111.5.4 (1981)).  Carol is therefore entitled to summary judgment on her quiet title claim.

C.  **Idaho's Recording Statutes**

The government seeks to avoid this result by invoking Idaho's recording statute, *see* Idaho Code § 55-606, along with two controversial Fifth Circuit decisions – *United States v. Creamer Industries, Inc.*, 349 F.2d 625 (5th Cir. 1965) and *Prewitt v. United States*, 792 F.2d 1353 (5th Cir. 1986).

Turning first to the Idaho recording statute, the government relies on the undisputed fact that it won the race to the county recorder's office. The government filed its notice of tax lien in September 2008; Carol lagged behind by more than two years, filing the divorce decree in October 2010.

Idaho Code § 55-606 provides that unrecorded grants and conveyances of real property can be defeated by an "encumbrancer, who in good faith, and for valuable consideration, acquires a . . . lien by an instrument that is first duly recorded." Idaho Code § 55-606. In other words, if the government is treated as a creditor, it can defeat the later-filed conveyance of real property to Carol. Significantly, however, the same statute also provides that "[e]very grant or conveyance of an estate in real property *is conclusive against the grantor* . . . ." *Id.* (emphasis added).[4]

The divorce decree is therefore "conclusive" against Joe Filicetti. Or, put differently, Joe cannot claim any rights to the property based on the fact that the decree

---
[4] The statute, in full, provides:

> Every grant or conveyance of an estate in real property is conclusive against the grantor, and also against everyone subsequently claiming under him except a purchaser or encumbrancer, who in good faith, and for valuable consideration, acquires a title or lien by an instrument that is first duly recorded.

Idaho Code § 55-606; *see also* Idaho Code § 55-613 ("encumbrance" includes "taxes, assessments, and all liens upon real property").

was unrecorded. The government concedes this point, but urges the Court to treat it as a third party creditor, without regard to whether Joe has any claim to the property. *See United States' Memo*, Dkt. 28, at 14.

This argument is, of course, contrary to *National Bank of Commerce,* which clarified that the focus is on the taxpayer – not the creditor's rights under state law. The government's argument also bumps up against the Ninth Circuit's decision in *Schmit v. United States*, 896 F.2d 352 (9th Cir. 1990), which held that a title naming the taxpayer as a joint owner is not controlling if the taxpayer, in reality, has no interest in the property.

In *Schmit,* Dorothy Schmit purchased a home entirely with her separate property, but recorded the title in her name and her husband's, as joint tenants. *Id.* at 353. Under Nevada law, Schmit presumptively gifted one-half of the property to her husband. *Id.* But she overcame that presumption by showing that she made all payments from her separate bank account. *Id.* at 353-54. Thus, the court held that the government could not impose a tax lien on the property for taxes owed by her husband:

> Schmit's home was always entirely her separate property under Nevada law. Regardless of the form of record title, Saligoe [Schmit's husband] never had any actual interest in Schmit's home. Thus, the government's lien never attached to the property, and the government cannot levy upon the property.

*Id.* at 354.

Though brief, *Schmit's* logic is drawn from the plain language of Internal Revenue Code § 6321 and is entirely consistent with *National Bank of Commerce*. Simply put, if the taxpayer has nothing, the government has nothing.

Despite this authority, the government urges the Court to follow the Fifth Circuit cases mentioned above – *Creamer* and *Prewitt*.[5] In *Creamer* and *Prewitt,* divided panels held that federal tax liens attached to properties that the taxpayers had previously conveyed in unrecorded instruments. *Creamer*, 349 F.2d at 628-29; *Prewitt*, 792 F.2d at 1355-56. The *Creamer* Court reasoned that "[a]s to the taxes owed to it, the United States was a 'creditor' within the Texas recording statute." 349 F.2d at 628.

*Creamer* drew a sharp dissent from Judge Brown, who – much like the later *National Bank of Commerce* Court – reasoned that that under Internal Revenue Code § 6321, the focus is on what rights the taxpayer has, not on protections afforded creditors under state recording statutes. *See* 349 F.2d at 629 (Brown, J., dissenting). As he explained, "Unless there is property belonging to the taxpayer, the Government's lien is nonexistent." *Id.* Judge Brown further reasoned that recording statutes were not designed to allow the federal government to take one person's property to satisfy another's tax debt:

> Laws of Texas which are designed to protect innocent persons dealing in faith on the revelations of title records are twisted to permit the great national sovereign to take property from one who is the acknowledged owner of it to apply on the tax debts of another . . . . I do not believe that Congress ever intended any such result. I do not think that a Court should lend its hand to anything so demeaning to a sovereign.

---

[5] *In addition to Creamer* and *Prewitt,* the government relies on a 1971 California federal district court opinion. *See Nomellini Constr. Co. v. United States*, 328 F. Supp. 1281 (E.D. Cal. 1971). *Nomellini* cited *Creamer*, but the Court is not persuaded by this aspect of the *Nomellini* decision. Further, *Nomellini* is distinguishable. Most significantly, the Court found that the taxpayer in that case had not truly sold the personal property subject to the tax lien. *Id.* at 1283. Additionally, regarding the vehicles that were purportedly transferred, the California Vehicle Code provided that "no interest" passed to the transferee without application for a new title certificate. *Id.* at 1284 n.6 (citing Cal. Vehicle Code § 5600).

*Id.*

The *Creamer* dissent has been adopted as the law by other circuits that have faced this issue.[6]  *See United States v. Gibbons,* 71 F.3d 1496, 1501 (10th Cir. 1995); *Thomson v. United States,* 66 F.3d 160, 163 (8th Cir. 1995); *see also United States v. V&E Eng'g & Constr. Co.*, 819 F.2d 331, 334 (1st Cir. 1987).  Further, *Creamer* and *Prewitt* have been criticized by federal and state courts across the country.  *See, e.g., Hamilton v. United States,* 806 F. Supp. 326, 334 (D. Conn. 1992) ("the persuasive dissent . . . in *Creamer* and the concurrence . . . in *Prewitt* leave those decisions less than compelling authorities); *Stafford v. Lunsford*, 53 S.W. 3d 906, 910 (Tex. Ct. App. 2001) ("Fortunately, the law is as Judge Brown would have it in at least three other federal circuits.") (citing *Gibbons*, 71 F.3d 1496, *Thomson*, 66 F.3d 160, and *V&E*, 819 F.2d 331).

The government minimizes this substantial body of contrary authority, asserting that it stands only for the unremarkable proposition that federal courts consult state law to determine the extent of a taxpayer's interest in any given piece of property.  *See United States Memo*, Dkt. 28, at 8.  More specifically, the government argues that the outcomes in various circuit cases differed simply because the underlying state law (typically, the recording statutes) were different.

---

[6] *Creamer* and *Prewitt* remain good law in the Fifth Circuit, however.  The Court rejects plaintiff's assertion that the Fifth Circuit called *Creamer* and *Prewitt* into question in *Wagner v. United States,* 545 F.3d 298 (5th Cir. 2008).  *See Plaintiff's Reply,* Dkt. 33, at 6; *Plaintiff's Opposition,* Dkt. 36, at 9-10.  *Wagner* simply dismissed an appeal for lack of jurisdiction.  545 F.3d at 303.

The Court rejects the government's crabbed view of these cases for two reasons. First, the statutes at issue in most of the cases are substantially similar.[7] *See Gibbons*, 71 F.3d at 1501 n.5 (quoting the relevant Colorado statute); *Thomson,* 66 F.3d at 153 (quoting the Minnesota statute) *Creamer,* 349 F.2d at 628 (quoting the Texas statute). There are some differences, but the salient feature in the statutes is that they protect creditors and purchasers from earlier, unrecorded conveyances. The statutes further provide that unrecorded conveyances are binding upon the parties to that conveyance, *see* Colo. Rev. Stat. § 38-35-109; 19 Vernon's Ann. Tex. Civ. Stat., art. 6627, or, alternatively, they do not "vest any property interest . . . in the transferor." *See Thomson*, 66 F.3d at 163 (discussing Minn. Stat. § 507.34).

The government's construction of these cases does find some superficial support in *United States v. V&E Engineering & Construction Co.*, 819 F.2d 331 (1st Cir. 1987). *V&E* decided that Puerto Rican laws differed from Texas's because the Puerto Rican statute expressly provided that a sale "between vendor and vendee *shall be binding on both of them*, . . . ." *Id.* (citing P.R. Laws. Ann. tit. 31, § 3746 (emphasis supplied by *V&E*). But this was not a meaningful distinction because the Texas statute at issue in *Creamer* had a similar provision. *See Creamer*, 349 F.2d at 628 (citing 19 Vernon's Ann. Tex. Civ. St., art. 6627, which provided that land sales "shall be void as to all creditors . . . *but the same as between the parties and their heirs . . . shall be valid and binding*.")

---

[7] A truly different statute might look like the one at issue in *United States v. Hole*, 1980 WL 1555 (D. Mass. Mar. 31, 1980), which provided that a conveyance had no effect "in passing title" until recorded. As the Eighth Circuit observed, under that type of statute, "the transferor seemingly retains an interest to which the § 6321 lien may attach." *Thomson*, 66 F.3d at 163 (discussing *Hole*).

(emphasis added). Notably, later courts describe *V&E* as having rejected *Creamer*. *See Gibbons*, 71 F.3d at 1501; *Thomson*, 66 F.3d at 163. *See also IRS Chief Counsel Advisory* 201024039, 2010 WL 2465293, at 4 & n.3. (2010) (observing that "while the First Circuit rejected the conclusion in *Creamer Industries* by trying to distinguish the statutes in the cases, the statutory schemes are not meaningfully distinguishable.")

A second problem with the government's characterization of contrary circuit authority is its tendency to focus on minor points in cases, while ignoring their broader teachings. The government also fails to meaningfully discuss some relevant authority. A good example is the government's treatment of Tenth Circuit authority. The most relevant Tenth Circuit case is *United States v. Gibbons*, 71 F.3d 1496 (10th Cir. 1995). *Gibbons* is directly on point and squarely rejects *Creamer*. The government, however, does not discuss this case, focusing instead on another Tenth Circuit case – *Gardner v. United States*, 34 F.3d 985 (10th Cir. 1994).[8]

The government rightly notes that *Gardner* involved a "unique" aspect of Kansas law. *See Gardner*, 34 F.3d at 988. (Specifically, under Kansas law, the act of filing a divorce decree creates a vested property interest in both spouses, and that property is not subject to a judgment creditor's lien during the pendency of the divorce proceedings. *Id.*) But *Gardner* also stands for the broader proposition that a federal tax lien "cannot . . . extend beyond the property interests held by the taxpayer." *Id.* (citing *United States v. Rodgers*, 461 U.S. 677 (1982)).

---

[8] To be fair, the government addressed *Gardner* in responding to a group of cases cited in plaintiff's motion, and plaintiff did not cite *Gibbons*. *See United States Memo.*, Dkt. 28, at 8. Nonetheless, the government was a party to *Gibbons*, and should have been aware of the case, and that it significantly undermined its argument here.

In sum, the overwhelming majority of courts considering the issue have rejected *Creamer* and *Prewitt* on their merits – not by distinguishing them. This Court also rejects *Creamer* and *Prewitt*. The cases are contrary to the plain language of the federal tax lien statute, I.R.C. § 6321; they are contrary to the Supreme Court's decision in *National Bank of Commerce*; and they are contrary to the Ninth Circuit's decision in *Schmit*. The Court therefore declines the government's invitation to adopt the Fifth Circuit approach.

**D.    Tenancy in Common**

The government's fallback argument is that – regardless of whether the divorce decree was recorded – Joe continued to own the property, as a tenant in common with Carol, through December 2008. The government cites the following language in divorce decree – and, specifically, the italicized last sentence – to support this argument:

> In the event Carol sells the residence within three (3) years from the date of entry of this Decree, she agrees to split any equity received from said sale after the payment of the remaining balance on the first mortgage and any costs associated with the sale of the property equally between her and Joe. *Three years and one day after the Judgment and Decree of Divorce is entered the property shall be Carol's and either retained or sold at her discretion, with her retaining all of the proceeds therefrom.*

*Divorce Decree,* Dkt. 31-3, ¶ 4.

If the italicized language existed in a vacuum, the government's argument would be persuasive. But that sentence, landing as it does in context, simply clarifies that after three years, Carol is no longer obligated to pay Joe half the equity if she decides to sell the house. After all, in the same section, the divorce decree unequivocally states: "Carol is awarded the parties' residence at 2323 Woodlawn." The intent of the quoted paragraph is also plain: Mr. Filicetti had an expectancy of money if Carol sold the property. He had

no right to compel that sale; that decision was entirely up to Carol. *Id.* While the divorce decree could have been more artfully drafted, the parties' intent is clear – the divorce decree awarded the house to Carol. *Cf. Chavez,* 192 P.3d at 1043-44 (parties' intent in divorce decree with some similar terms clearly awarded spouse title to the home). The Court therefore rejects the government's assertion that the divorce decree "makes no disposition of the subject property for a period of three years and one day." *United States Memo.*, Dkt, 28, at 15. Carol received the home in the divorce and she is not the delinquent taxpayer here. The government's lien therefore cannot attach to Carol's home and she is entitled to summary judgment.[9]

## ORDER

Plaintiff Carol Filicetti's Motion for Summary Judgment (Dkt. 20) is **GRANTED**. Defendant The United States' Cross-Motion for Summary Judgment (Dkt. 27) is **DENIED.**

Plaintiff is directed submit a proposed Judgment within fourteen (14) days from the date of this decision and order.

DATED: **February 23, 2012**

Honorable Edward J. Lodge
U. S. District Judge

---

[9] Given the rulings set forth herein, the Court need not address the parties' remaining arguments.