UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CAROL A. FILICETTI,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, THE<br>STATE OF IDAHO, and THE IDAHO<br>STATE TAX COMMISSION,<br><br>                    Defendants. | Case No. 1:10-cv-595-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Carol Filicetti[1] requests attorney fees and costs incurred from prosecuting

a quiet title action against the United States of America to defeat its tax lien filed against

her residence. (Dkt. 51). In addition, Carol asks the Court to review the Clerk's action

denying costs due to the cost bill's untimely submission. (Dkt. 57, 62, 66.) The

Government argues that its position was substantially justified as defined in 26 U.S.C. §

7430, and that Carol did not exhaust her administrative remedies, precluding an award of

---

[1] The Court will refer to Carol Filicetti and her ex-spouse, Joe Filicetti, by first names to avoid confusion and means no disrespect.

legal fees. The Government contends the Clerk's determination denying costs was proper.

Upon review, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d).

## BACKGROUND

Carol and Joe divorced in December of 2005. The divorce decree awarded the Filicetti's home to Carol, although she agreed to pay Joe 50 percent of the equity if she sold the home within three years. Specifically, the divorce decree provided:

> Carol is awarded the parties' residence at 2323 Woodlawn.
> . . .
> In the event Carol sells the residence within three (3) years from the date of entry of this Decree, she agrees to split any equity received from said sale after the payment of the remaining balance on the first mortgage and any costs associated with the sale of the property equally between her and Joe. Three years and one day after the Judgment and Decree of Divorce is entered the property shall be Carol's and either retained or sold at her discretion, with her retaining all of the proceeds therefrom.

(Divorce Decree, Ex. C to Parker Dec., Dkt. 31-3, ¶ 4.)

Carol did not sell the house during the three years after the divorce decree was entered. But she did not record the divorce decree with the county recorder until October of 2010, nearly five years after entry of the divorce decree. Meanwhile, Joe did not pay his federal income taxes for 2005, and in September of 2008, the Government filed a notice of federal tax lien against Joe for unpaid taxes, and sought to levy upon the house.

**REPORT AND RECOMMENDATION - 2**

Carol commenced a quiet title action in state court, which the Government later removed to this Court, seeking a determination that the federal tax lien did not attach to her home.

Carol prevailed upon summary judgment. The Court held that, under Internal Revenue Code § 6321 and the terms of the divorce decree, Joe had no property interest in the home when the Government filed its notice of tax lien, and therefore the Government's lien never attached to the residence. The Court entered a Judgment in favor of Carol on March 8, 2012. (Dkt. 49.)

On March 30, 2012, Carol filed her motion for attorney fees and costs, seeking fees of $39,760.00, and costs of $2,098.44, pursuant to Internal Revenue Code § 7430, or alternatively under the Equal Access to Justice Act, 28 U.S.C. § 2412. Carol's attorney, Mr. Alkire, charged $200 and $225 per hour for 196.4 hours of attorney time; and calculated costs comprising legal assistant fees of $1,567.50 at the rate of $75 per hour for 20.9 hours; recording fees ($109.00); photocopy charges ($109.90); filing fees ($88.00); service of process fees ($147.00); and long-distance telephone charges ($77.04).

The Government responded, arguing that Carol is not eligible for reimbursement of her attorney fees and costs because she failed to exhaust administrative remedies, and the Government's position was substantially justified. Further, the Government argues that, if the Court awards fees, Mr. Alkire's fees are not reasonable or allocable to the Government, and he is not entitled to more than the presumptively reasonable hourly rate.

Mr. Alkire filed a separate bill of costs on April 5, 2012, claiming the identical costs itemized in his motion. On the cost bill, he itemized $235.00 in clerks and service

REPORT AND RECOMMENDATION - 3

fees; $218.90 in photocopy fees; and $1,644.54 in "other fees," for paralegal fees and telephone charges. The Government objected to the cost bill for the same reasons expressed in its response to Carol's motion for attorney fees, and also because the cost bill was untimely filed and incompliant with the District's local rules. The Clerk denied the cost bill under Dist. Idaho L. Rule 54.1 as untimely filed. (Dkt. 62.) Carol seeks review of the Clerk's determination.

## ANALYSIS

### 1.    Entitlement to Fees and Costs

Under 26 U.S.C. § 7430, the prevailing party in a lawsuit brought in connection with the determination, collection, or refund of any tax, interest or penalty under the Internal Revenue Code may be awarded a judgment for "reasonable administrative costs incurred in connection with such administrative proceeding…and reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. § 7430(a)(1), (2). Both parties analyze Carol's claim for fees and costs under section 7430.[2] Under this provision, certain requirements must be met, and exceptions exist.

First, a party is not to be treated as a prevailing party if the Government establishes that its position in the proceedings was "substantially justified." 26 U.S.C. § 7430(c)(4)(B)(ii). The Government bears the burden to demonstrate that its position was substantially justified, both in the administrative proceeding and in the court proceeding. *Pacific Fisheries Inc., v. United States*, 484 F.3d 1103, 1107 (9th Cir. 2007) (government

---

[2] Although Carol asserts an alternative claim for attorney fees under the Equal Access to Justice Act, the reasoning applied by the courts under the EAJA applies equally to review under section 7430, and there is little dispositive difference. *Huffman v. Comm'r of Internal Revenue,* 978 F.2d 1139, 1143 (9th Cir. 1992). Neither party disputes that section 7430 applies.

REPORT AND RECOMMENDATION - 4

bears burden of establishing substantial justification); *Huffman v. Comm'r of Internal Revenue*, 978 F.2d 1139, 1144 (9th Cir. 1992) (upholding bifurcated approach and delineating separately the administrative and court phases of the proceedings).

Second, a judgment for reasonable litigation costs should not be awarded in any court proceeding unless the court determines that "the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service." 26 U.S.C. § 7430(b)(1).

The Court may award only "reasonable litigation and administrative costs which are allocable to the United States," and not to any other party. 26 U.S.C. § 7430(b)(2). And, an attorney's hourly rate is subject to a presumptively reasonable rate, which the parties agree was $180.00 per hour during 2010-2012. 26 U.S.C. § 7430(c)(B)(iii); Rev. Procs. 2009-50, 2010-40, 2011-52. An attorney may request a higher rate, but the Court must determine that a special factor, such as the limited availability of qualified attorneys for the proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies the higher rate. 26 U.S.C. § 7430(c)(B)(iii).

As a preliminary matter, the Government does not dispute that Carol prevailed with respect to the most significant issue in the proceedings. Nor does the Government dispute that Carol meets the other procedural requirements of the statute, which include certain net worth requirements. Therefore, the three issues before the Court are whether the position of the Government was substantially justified; whether Carol exhausted available administrative remedies; and finally, if fees are awarded, whether such fees are reasonable and allocable to the United States.

**REPORT AND RECOMMENDATION - 5**

### A.    *Position of the United States*

The position of the United States is substantially justified "if it is justified to a degree that satisfies a reasonable person," or has a "reasonable basis both in law and fact." *Pacific Fisheries Inc.*, 484 F.3d at 1108; *Kenney v. United States*, 458 F.3d 1025, 1032 (9th Cir. 2006). "To be substantially justified means more than merely undeserving of sanctions for frivolousness." *Kenney*, 458 F.3d at 1032 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Court is required to analyze the Government's position separately for the administrative and the judicial proceeding, because the position taken in the administrative proceeding does not automatically extend to the judicial proceeding. *Kenney*, 458 F.3d at 1032—33.

The Court may consider various factors in the context of the proceedings to arrive at a determination. For instance, the Court may review the Government's answer to the complaint, and consider whether its position was defensible given the facts known to the Government at the time. *Kenney*, 458 F.3d at 1033. The Court also may review whether the Internal Revenue Service followed its applicable published guidance in the administrative proceeding, or whether the United States has lost in courts of appeal for other circuits on substantially similar issues. 26 U.S.C. § 7430(c)(4)(B)(ii), (iii).

Here, the Government took the same unyielding position from the time of Carol's first inquiry to its Answer in these proceedings. There is therefore no appreciable difference under *Kenney* requiring the Court to treat the Government's position differently during separate phases of the proceedings.

**REPORT AND RECOMMENDATION - 6**

But the Court does find that the Government's position taken in its correspondence, in its answer, and in its arguments in opposition to Carol's motion for summary judgment, was based upon unsupportable interpretations of applicable federal case law and Idaho state law. The Court made short shrift of the Government's arguments in its Memorandum Decision and Order, (Dkt. 47), arguments that the Government attempts to raise anew here.

Under Idaho law, the divorce decree transferred title to the spouse awarded the real property—in this case, Carol. The Government again raises its argument that the divorce decree was ambiguous, but the Court summarily rejected that argument because the Government failed to read the transfer language in context with the entire decree. The effect of the transfer meant that Joe had no property interest in the house. And under Internal Revenue Code § 6321,[3] because Joe had no property interest in the house, neither did the Government. Therefore, the lien never arose as against the house, because there was no real property interest to which it attached.

The Government claims it relied upon supportable interpretations of Fifth Circuit case law. True, in *United States v. Creamer Industries, Inc.*, 349 F.2d 625 (5th Cir. 1965), and *Prewitt v. United States*, 792 F.2d 1353 (5th Cir. 1986), divided panels held that federal tax liens attached to properties that the taxpayers had previously conveyed in unrecorded instruments.  And in *Creamer*, the court accepted a similar argument as that made by the Government in this case, finding that the United States was akin to a creditor

---

[3] IRC § 6321 states: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, . . .) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, *belonging to such person*." (emphasis added).

**REPORT AND RECOMMENDATION - 7**

such that the failure by the taxpayer to record a conveyance trumped the fact that the
taxpayer no longer owned the property. In other words, the failure to record the
conveyance defeated the property owner's claim that the tax lien failed to attach, even
though the taxpayer no longer had a real property interest in the property.

But *Creamer* was decided long before the United States Supreme Court decision
in *United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985), while *Prewitt* was
published only four days after the Supreme Court's decision, leaving little time for the
court to digest its holding. *Nat'l Bank of Commerce* put to rest any contention that the
Government could somehow be viewed as a third party creditor when the issue was the
attachment of a tax lien. In *Nat'l Bank of Commerce,* the Supreme Court held that, in a
levy proceeding, the IRS "steps into the taxpayer's shoes," and can acquire no more
rights than what the taxpayer himself possesses. 472 U.S. at 725. Other courts have
uniformly rejected the holding in *Creamer*, and instead have adopted the reasoning
expressed by Judge Brown in *Creamer*'s dissent. (*See* Mem. Decision and Order at 10,
Dkt. 47, citing cases).

The Government's argument in this matter ran afoul of Ninth Circuit case law as
well. The Court explained that the Government's argument was contrary to the decision
in *Schmit v. United States*, 896 F.2d 352 (9th Cir. 1990), which held that a title naming
the taxpayer as a joint owner is not controlling if the taxpayer, in reality, has no interest
in the property. All of the above authority regarding substantially similar issues is

contrary to the position taken repeatedly, albeit consistently, by the Government in this case.[4]

The Court's opinion went so far as to reject "the Government's crabbed view" of the relevant case law, and chastised the Government for its tendency to focus on minor points in the cases while "ignoring their broader teachings" and failing to "meaningfully discuss some relevant authority." This case did not present a close question. The Court therefore finds that the Government's position was not substantially justified and recommends an award of attorney fees. *Cf. TKB Internat'l, Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir. 1993) (finding that when the case presented "a close question of law," it could not  say that the district court abused its discretion in finding the Government's position was substantially justified).

The Government would do well to review *Newnham v. United States*, 813 F.2d 1384 (9th Cir. 1987). In that case, the Government argued contrary to the applicable statutory authority. Although the court considered a different portion of the tax code governing lien priority, the court rejected the Government's argument that it could be viewed as a judgment lien creditor because the argument was inconsistent with the statutory framework. *Newnham*, 813 F.2d at 1386. The court awarded fees under 26 U.S.C. § 7430, commenting that "[i]t is disconcerting that the standards of excellence attributed to the Government in the collection of its revenue were so abandoned in this case," while Judge Kozinski wrote separately to express his "personal disappointment

---

[4] Moreover, the Government argued in *Nat'l Bank of Commerce* the very argument that it now debunks here. In its appellate brief, the Government stated, "It is hornbook tax law that the IRS 'steps into the taxpayer's shoes' when levying on his property. The IRS, in other words, acquires whatever rights the taxpayer himself possesses." Appellate Brief, *United States v. Nat'l Bank of Commerce*, 1985 WL 669719 at *8 (Feb. 21, 1985).

**REPORT AND RECOMMENDATION - 9**

with the Government lawyers." While the Court in this case will not go quite that far, it is

similarly disconcerting that the Government relied upon criticized authority in pursuit of

a tax liability that wasn't Carol's to pay, when Carol had been awarded the property as

part of the divorce settlement.

### B.      Exhaustion of Administrative Remedies

The Government's arguments regarding this issue are similarly disingenuous.

Section 7430 provides an exception to an award of litigation costs in a court proceeding if

the plaintiff has not exhausted the administrative remedies available to her within the

Internal Revenue Service. The key word is "available."

The Government argues that the provisions of 26 C.F.R. § 301.7430-1(d)(1) were

not met. Subsection (d) explains that a party has not exhausted the administrative

remedies available within the Internal Revenue Service unless:

> (i) the party submits to the district director of the district having jurisdiction
> over the dispute a written claim reciting facts and circumstances sufficient
> to show the nature of the relief requested and that the party is entitled to
> such relief; and
> (ii) the district director has denied the claim for relief in writing or failed to
> act on the claim within a reasonable period after such claim is received by
> the district director.

The Government astutely notes that Carol did not send a written claim to the

district director, nor did she receive a written denial from the district director.

But the Government ignores its own Notice, which explains that the

position of the district director was eliminated in 2003, and all future documents

that previously would have been mailed to the district director should be sent to

the Internal Revenue Service Case Processing center in Seattle. Notice 2003-19,

**REPORT AND RECOMMENDATION - 10**

2003-14 I.R.B. 703. Carol followed those instructions. (*See* Aff. of Alkire, Dkt. 54.)

The cases cited by the Government in support of its argument that "futility" is not a defense to the exhaustion requirement are not applicable. In *In re Lilly* (*Lilly v. IRS*), 76 F.3d 568, 573 (4th Cir. 1996), the taxpayer prevailed against the Government in an adversary proceeding, but lost on her claim for recovery of reasonable litigation costs because she had not exhausted her administrative remedies under section 7340(b)(1). The court rejected Lilly's argument that engaging in an administrative proceeding would have been futile. *Id.* However, in *Lilly*, the debtor had an administrative remedy, and she conceded she failed to exhaust it.

Similarly, in *Kenlin Industries, Inc. v. United States*, 927 f.2d 782, 787 (4th Cir. 1991), the taxpayer conceded that it had an available administrative remedy—an Appeals Office conference—but argued that it did not pursue the conference because the regulation providing for such conference had expired. The court rejected the taxpayer's argument, explaining that section 7340(b)(1) required exhaustion, and other applicable regulations set forth the procedure available to the taxpayer for use in securing review by way of an appeals office conference. *Id.* The court held that, by failing to avail itself of the conference, the taxpayer forfeited any right to an award of attorney fees and costs against the Government. *Id.*

**REPORT AND RECOMMENDATION - 11**

Here, the Government contends that the administrative remedy available to Carol was the submission of a written claim for relief to the district director, and either the receipt of a written denial, or the passage of sixty days after the submission of the claim. However, the Government's own Notice explained that there was no longer a district director, and the Notice gave Carol instructions on how to submit documents that were formerly submitted to the district director. Carol availed herself of that remedy, and the IRS acted by verbally telling Carol that her claim was denied and there would be no written denial. Contrary to the Government's assertion, the sixty day waiting period was not applicable because the IRS did not "fail to act." The IRS acted by verbally denying Carol's claim.

Carol therefore exhausted the only administrative remedy that was available. The Government has not identified any other administrative remedy. The facts here are in stark contrast to *Lilly* and *Kenlin*, where both taxpayers had an available remedy, but argued that the remedy was not available in a practical sense and therefore did not engage in the process to begin with. Here, Carol engaged in the only remedy the Government has identified by its written guidelines, and participated in the process the Internal Revenue Service established for seeking relief from a tax lien.[5]

---

[5] The Government takes issue with Carol's alternative submission of a request for discharge of lien on October 27, 2010, contending that a written denial of that request was issued on November 15, 2010, well after Carol filed her complaint for quiet title. However, the Court finds that 26 C.F.R. § 301.7430-1 does not require submission of a request for discharge of lien. Further, the alternative was suggested by the Internal Revenue Service after Carol was told she had no appeal rights from the verbal denial of her request for nonattachment made pursuant to 26 C.F.R. § 301.7430-1(d). And finally, the Court held in its memorandum decision and order (Dkt. 47) that the lien on the residence was not enforceable because it never attached to Carol's property. There was, therefore, no lien to discharge.

**REPORT AND RECOMMENDATION - 12**

Carol is therefore entitled to recovery of reasonable litigation costs and reasonable administrative costs, as limited by the Court's further analysis of the amount of fees recoverable.

**2.      Costs and Fees Recoverable**

**A.      Recovery of Administrative Costs**

Next, the Government argues Carol is not entitled to recovery of costs incurred for preparing and submitting her application for nonattachment of lien and application for discharge of lien to the IRS, because those submissions are "collection actions," and collection actions do not constitute an "administrative proceeding" under 26 C.F.R. § 301-7430-3(a)(4). Carol argues that the Government's position is incorrect, because the exclusion of collection actions from the definition of an administrative proceeding is limited to actions taken by the IRS to collect a tax, or actions taken by the taxpayer, and Joe, not Carol, was the taxpayer.

Administrative costs include fees paid for the services of an attorney. 26 U.S.C. § 7430(c)(2)(B). 26 C.F.R. § 301-7430-3(a)(4)(b) provides that, for purposes of section 7430, an "administrative proceeding" for which such costs are recoverable does not include "collection actions . . . taken *by a taxpayer* to remedy the Internal Revenue Service's failure to release a lien under section 6325." (emphasis added.)  On October 7, 2010, Carol submitted her application for nonattachment of federal tax lien under 26 U.S.C. § 6325 and 26 C.F.R. § 301.6325-1(e). (Aff. of Alkire Ex. A, Dkt. 54-1). Her October 20, 2010 application

**REPORT AND RECOMMENDATION - 13**

for certificate of discharge also was submitted pursuant to section 6325. But Joe, not Carol, was the "taxpayer." The language of the statute and the corresponding regulation does not include actions taken pursuant to section 6325 by a party other than the taxpayer.

The Government next argues that Carol did not receive any notice enumerated in 26 U.S.C. § 7430(c)(2), which notice triggers the date from which administrative costs are calculated. Section 7430(c)(2) limits "administrative costs" to include only those costs incurred on or after whichever of the following is the earliest:

> (i) the date of receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent.

Therefore, the Government argues that, because Carol never received any of the above notices, she may not recover any costs or fees incurred in submitting her applications to the IRS.

Again, the Government overlooks the examples provided in the regulations and the limiting language in the statute, which applies only to actions taken by the "taxpayer." *See* 26 C.F.R. 301.7430-3(c) (defining "administrative proceeding date" and providing examples involving receipt of the enumerated notices by the taxpayer who owes the tax). Carol was not the taxpayer in this case. And not being the taxpayer, Carol would not receive the above notices. *C.f. Culpepper-Smith v. U.S.*, 50 F.Supp.2d 425, 432 (E.D. Pa. 1999) (awarding reasonable administrative

**REPORT AND RECOMMENDATION - 14**

costs despite taxpayer's lack of receipt of notice of deficiency, because IRS never sent the required notice). Therefore, the language of the statute limiting the taxpayer to recovery of administrative costs incurred on or after receipt of the above notices is inapplicable.

Moreover, Mr. Alkire's services and other expenses incurred prior to filing this lawsuit may be considered to have been incurred in connection with a court proceeding given Carol was denied pursuit of other administrative channels, such as an appeal. Carol is therefore entitled to her attorney fees and costs incurred in submitting the two applications to the IRS.

### B.    Reasonableness of the Claimed Fees

#### (1)    *Departure From the Presumptive Rate*

Mr. Alkire claims fees at a rate of $200 and $225 per hour, above the statutory presumptive rate the parties concede was $180 per hour during 2010—2012. The Government argues that an upward departure is not justified because the case did not involve a substantive tax issue requiring Mr. Alkire's specialized knowledge. Mr. Alkire contends there was a lack of qualified attorneys to handle the issues in this suit, despite the underlying lawsuit being one for quiet title, and argues for an upward adjustment.

26 U.S.C. § 7430(c) limits an attorney's hourly rate to the presumptively reasonable rate unless the Court determines that a "special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate." Although the statute speaks also of "prevailing market rates," the "special factor"

formulation "suggests Congress thought that [$180] an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be…" *Huffman*, 978 F.2d at 1149 (quoting *Pierce*, 487 U.S. at 572.) Counsel's expertise in tax law, in and of itself, is not a special factor justifying an upward departure. *Huffman*, 978 F.2d at 1150. Rather, the special training must be in an area "needful for the litigation in question." *Id*. at 1149.

Mr. Alkire has not identified anything other than his specialized training in the area of tax law, both as an attorney and Certified Public Accountant, to justify an upward departure from the statutory rate. His bald assertion that a limited number of similarly experienced attorneys was available is not enough. Accordingly, Mr. Alkire is limited to the presumptive hourly rate of $180.00.

### (2)   *Fees and Costs Allocable to the United States*

Having determined Carol is entitled to an award of litigation costs and administrative costs, which costs include attorney fees at an hourly rate of $180, the next issue is whether the costs are both allocable to the Government and reasonable. The Government argues that certain costs are not allocable to it because some of Mr. Alkire's time was spent on issues other than this lawsuit, such as negotiations with potential purchasers, and addressing matters relating to state tax liens. Second, the Government contends the fees are unreasonable, considering there are lumped time entries. The Government asserts that 61.5 hours should be deducted from Mr. Alkire's 196.4 billed hours.

**REPORT AND RECOMMENDATION - 16**

Section 7430(b)(2) permits an award of litigation and administrative costs only for "reasonable litigation and administrative costs which are allocable to the United States and not to any other party." The Court has discretion to omit hours that are not "reasonable" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The Court has reviewed Mr. Alkire's billing records, and concludes that there are some deficiencies with his billings. First, Mr. Alkire claimed fees for 11.2 hours in 2012, and 8 "estimated" hours also in 2012, for which a billing statement is not attached. Presumably, the estimated hours include time spent submitting the request for fees. Mr. Alkire is entitled to reasonable fees and costs associated with defending against the Government's fee challenge under section 7430. *Miller v. Alamo*, 983 F.2d 856, 862 (8th Cir. 1983).  Therefore, Mr. Alkire should be permitted to submit a supplemental affidavit detailing the hours expended in 2012. Upon submission of the supplemental affidavit, the Court will review the time spent and determine whether an additional amount of fees may be awarded.

Second, the Court agrees with the Government that Mr. Alkire billed for time not allocable to the Government. For example, Mr. Alkire billed for time spent on the residential real estate transaction between Carol and buyers who had submitted an offer to purchase her home, drafting correspondence to Joe, and dealing with matters related to the State of Idaho's tax lien.[6] Mr. Alkire also lumped time together with costs for time

---

[6] These attorney hours include the following time entries detailed on Exhibit A (Dkt. 58-1 at 2): 10/11/10-1.5 hours; 10/12/10- 0.5 hours; 10/15/10- 0.7 hours; 10/18/10- 0.4 hours; 12/08/10 -2.0 hours; 12/09/10 - 0.2 hours; 12/22/10 - 1.0 hours; 01/07/11 - 1.1 hours; and 02/03/11- 1.2 hours. The time entry for .3 hours on 12/27/10 was for the legal assistant, and will be considered later in this opinion.

**REPORT AND RECOMMENDATION - 17**

spent related to the above. Having reviewed the objectionable lumped time entries, the

court concludes that some of those time entries should be trimmed. [7]

The Court disagrees, however, with the Government's contention that Mr. Alkire's

time spent speaking with his client, without further detail, as well as the initial

consultations, are not compensable. An attorney must undertake an initial consultation,

and keep the client apprised of developments. Nor does the Court find the time spent

excessive. The Court therefore will allow the billings to which the Government objected

that occurred on 10/04/10, 10/5/10, 10/6/10, 10/13/10, and 11/10/10.

Taking Exhibit A and adjusting for 14.1 hours of disallowed attorney time entries,

the Court finds that Carol is entitled to an award of attorney fees in the amount of

$29,358.00. The Court arrived at this figure by taking the 177.2 attorney hours

documented by Mr. Alkire, deducting 14.1 hours of time spent that was not allocable to

the Government, and multiplying by the rate of $180.00.

The Government objected also to the $1,567.50 in legal assistant fees that were

included in the $2,098.44 of itemized costs, claiming that such costs should have been

submitted with a separate bill of costs under Dist. Idaho L. Rule 54.1. Mr. Alkire's legal

assistant's time was detailed in his billing records, and comprised 20.90 hours at $75 per

hour.

Local Rule 54.1 does not include a provision for reimbursement of paralegal or

legal assistant fees. Rather, Mr. Alkire's request for reimbursement of his legal assistant's

---

[7] The court has deducted the extra tenths of an hour for the lumped time entries identified by the Government in its Exhibit A (Dkt. 58-1 at 2), except for the entry on 12/29/10. For that time entry, the Court deducted 2 hours for the preparation of a motion for default against the State of Idaho.

fees was correctly submitted as part of his "litigation costs" under section 7430. *Miller*, 983 F.2d at 862. Work performed by paralegals is compensable as "litigation costs" under section 7430 if it is work that would have been done by an attorney. *Miller*, 983 F.2d at 862. If such hours were not compensable, then attorneys may be compelled to perform the duties that could otherwise be fulfilled by paralegals, thereby increasing the overall cost of legal services. *Id.* (citing *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir.1988), *aff'd*, 496 U.S. 154 (1990)).

The problem, however, concerns whether Mr. Alkire's legal assistant has the same education and experience as a paralegal, and whether she performed work that otherwise would have been performed by Mr. Alkire. Mr. Alkire has not described his legal assistant as a paralegal, or supported by affidavit, either his legal assistant's experience or that she performed work that he otherwise would have done.

Mr. Alkire should be given the opportunity to correct the above deficiencies if able to do so. In the event he can address the above issues to the Court's satisfaction, the Court will review the time entries of Mr. Alkire's legal assistant and consider compensation of Carol for the same.

### C.     Bill of Costs

Carol has requested review of the denial of the costs claimed on her Bill of Costs, submitted on April 5, 2012. The Motion is appropriately considered as a motion to retax pursuant to Dist. Idaho L. Rule 54.1 (d).

The majority of the costs claimed on the cost bill is for legal assistant fees, and more properly considered as "litigation costs," not costs under Dist. Idaho L. Rule 54.1.

**REPORT AND RECOMMENDATION - 19**

The Court recommended those fees be disallowed under 26 U.S.C. § 7430, as discussed above.

That leaves the Court with the costs claimed for recording documents, serving the complaint, filing this lawsuit, and photocopies, in the total amount of $530.04. In examining the costs, the only cost allowable under the federal rules is the $88.00 for the filing fee. But the cost bill was untimely submitted pursuant to Dist. Idaho L. Rule 54.1, because it was not submitted in the proper form within fourteen days after entry of judgment. Moreover, even if timely submitted, the other claimed fees for recording documents with the Ada County Recorder, private process servers, AT&T conference calls, courier fees, and photocopies of documents other than the cost of exhibits attached to documents required to be filed and served with the Court, are not allowable even if they had been timely submitted. *See* 28 U.S.C. §§ 1920—1923. Therefore, the Clerk's action denying the remaining $530.04 in claimed costs is correct, and the motion to retax should be denied.

## CONCLUSION

Carol prevailed in her case against the Government, and she is entitled to litigation costs and administrative costs under 26 U.S.C. § 7430 in the total amount of $29,358.00 for Mr. Alkire's time. Mr. Alkire should be directed to submit a supplemental affidavit detailing the time spent in 2012, and, if able, correcting the deficiencies with respect to the time claimed for his legal assistant, consistent with the Court's Report and Recommendation. The motion to retax should be denied, as the cost bill was untimely,

and other than the potentially awardable paralegal fees, the costs claimed in the motion

for attorney fees were not appropriately submitted in accordance with Local Rule 54.1.

## RECOMMENDATION

### NOW THEREFORE IT IS HEREBY RECOMMENDED:

1) Motion for Attorney Fees and Costs (Dkt. 51) be **GRANTED IN PART AND DENIED IN PART.**

2) Motion To Review Clerk's Action on Costs (Dkt. 66) be **DENIED**.

Written objections to this Report and Recommendation must be filed within

fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or

as a result of failing to do so, that party may waive the right to raise factual and/or legal

objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **January 07, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 21**